# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IN RE:**<br><br>**H. KENNETH LEFOLDT, JR.**<br>           **Plaintiff,**<br>**v.**<br><br>**LINCOLNSHIRE AMC HOLDINGS, LLC; LINCOLNSHIRE MANAGEMENT, INC.; LINCOLNSHIRE EQUITY FUND IV LP; LINCOLNSHIRE IV A AMC PASS THROUGH LP; LINCOLNSHIRE EQUITY FUND IV A LP; LINCOLNSHIRE IV A AMC BLOCKER CORP.; LINCOLNSHIRE EQUITY PARTNERS IV LP; AND LINCOLNSHIRE EQUITY IV, LLC**<br>           **Defendants**. | MISCELLANEOUS CASE NO.: |

## <u>MEMORANDUM IN SUPPORT OF TRUSTEE'S PETITION TO ENFORCE SUBPOENAS</u>

Plaintiff H. Kenneth Lefoldt, Jr., in his capacity as Trustee ("**Trustee**") of the Liquidating Trust of JAB Energy Solutions II, LLC ("**JAB II**" or "**Debtor**"), hereby files this petition to enforce subpoenas, ₁pursuant to Rules 45(c) and 37(a)(2) of the Federal Rules of Civil Procedure, or, alternatively, transfer the Motion pursuant to Rule 45(f).

---

[1] In accordance with Local Civil Rule 7.1(a), attached to this Memorandum as **Exhibit A** is an affidavit authenticating all exhibits referenced herein. The subpoenas at issue in this matter are: **Exhibit A-1,** Subpoena to Lincolnshire AMC Holdings, LLC; **Exhibit A-3,** Subpoena to Lincolnshire Management; Lincolnshire Equity Fund IV LP; Lincolnshire IV A AMC Pass Through LP; Lincolnshire Equity Fund IV A LP; Lincolnshire IV A AMC Blocker Corp.; Lincolnshire Equity Partners IV LP; and Lincolnshire Equity IV LLC.

I.     **JURISDICTION**

Rule 45 of the Federal Rule of Civil Procedure requires that subpoenas be issued from "the court where the action is pending," but permits the "court from the district where compliance is required [to] quash or modify the subpoena." See Fed. R. Civ. P. 45(a)(2) and (d)(3). However, if "the court where compliance is required did not issue the subpoena, [that court] may transfer a motion under [Rule 45] to the issuing court if the person subject to the subpoena consents or the court finds exceptional circumstances." Fed. R. Civ. P. 45(f).

II.    **PARTIES**

A.     Movant

    1.     H. Kenneth Lefoldt, Jr., in his capacity as the Plaintiff in "*H. Kenneth Lefoldt, Jr. v. Brent Boudreaux, George Henry, Warren Stephen Orlando, Sonda Robertson, Alan Vando, Henry Robards, Jr., and Allison Marine Holdings, LLC*," Case No. 4:23-cv-03331, currently pending in federal court in the Southern District of Texas ("**SDTX Case**").

B.     Respondents/Recipients of Third Party Subpoenas Issued by Movant

    1.     Lincolnshire AMC Holdings, LLC ("**Linconshire Holdings**")

    2.     Lincolnshire Management, Inc. ("**Lincolnshire Management**")

    3.     The Lincolnshire Funds are made up of: Lincolnshire Equity Fund IV LP; Lincolnshire IV A AMC Pass Through LP; Lincolnshire Equity Fund IV A LP; Lincolnshire IV A AMC Blocker Corp.; Lincolnshire Equity Partners IV LP; and Lincolnshire Equity IV LLC ("**Lincolnshire Funds**").

III.    **SUMMARY OF ARGUMENT AND RELIEF SOUGHT**

In this Motion, the liquidating trustee of a bankrupt oil and gas general contractor seeks an order compelling subpoena targets related to certain defendants in an officer and director breach of fiduciary duty case pending in the Southern District of Texas ("**SDTX**"), to produce certain documents and communications, including those relating to certain transfers of assets ("**Post-Petition Transfer Communications**") that the Trustee alleges the SDTX defendants caused the Debtor to make after the filing of the bankruptcy.  These transfers were concealed from the Court and the creditors in the bankruptcy proceeding.

The subpoena targets herein are not defendants in the SDTX litigation. Lincolnshire Holdings is the holding company for a private equity firm that is the majority owner of the Debtor's manager (Allison Marine Holdings, LLC, a defendant in the SDTX litigation) and, upon information and belief, the employer of George Henry, who also serves as the Managing Director of Lincolnshire Management, another subpoena target, that includes various Lincolnshire funds. [2] Mr. Henry was the Vice President of the Debtor and is also a defendant in the SDTX litigation.

Lincolnshire Holdings, Lincolnshire Management, and the Lincolnshire Funds (collectively, the "**Lincolnshire Entities**") are represented in the SDTX litigation by the same counsel who represents all of the defendants in that litigation.  Although the Lincolnshire Entities' Texas counsel accepted service of the subject subpoenas on their behalf, and voluntarily produced some responsive documents, the Lincolnshire Entities ultimately refused to produce Post-Petition Transfer Communications and raised jurisdictional defenses to the SDTX Court compelling them

---

[2] The Lincolnshire Funds are made up of: Lincolnshire Equity Fund IV LP; Lincolnshire IV A AMC Pass Through LP; Lincolnshire Equity Fund IV A LP; Lincolnshire IV A AMC Blocker Corp.; Lincolnshire Equity Partners IV LP; and Lincolnshire Equity IV LLC.
    All subpoena targets are part of the Lincolnshire private equity group.  Upon information and belief, Lincolnshire Holdings is the holding company for the group, Lincolnshire Management is the entity within the group that ostensibly provides management services to the companies the group invests in, and the Lincolnshire Funds (defined below) are the entities that make the investments.

to make such production.  Because the SDTX Court has already ruled that the Post-Petition Transfer Communications are relevant to the Trustee's claims, and within the scope of discovery, and that all discovery targets within that court's jurisdiction must produce Post-Petition Transfer Communications, the Trustee seeks an order from this Court compelling the Lincolnshire Entities to produce such documents and communications to the Trustee within five (5) business days, or alternatively, the Trustee seeks an order transferring this Motion to the SDTX Court.

## IV.    BACKGROUND

The above-referenced subpoenas were issued from federal court in the Southern District of Texas where the SDTX Case is pending.  The Trustee brought the SDTX Case against (i) the Debtor's former manager, Allison Marine Holdings, LLC ("**AMH**"), and officers (Brent Boudreaux, George Henry, Warren Stephen Orlando, Sonda Robertson, and Alan Vando) (collectively, the "**JAB Officers**") for breaches of the fiduciary duties they owed to JAB and its stakeholders, and against (ii) Henry Robards, Jr., in his capacity as the President and Chief Executive Officer of AMH, for aiding and abetting breaches of fiduciary duties owed to JAB by the JAB Officers. The subject subpoenas were issued by the Trustee to the Lincolnshire Entities.

### A.  Subpoena to Lincolnshire Holdings

On March 12, 2024, the Trustee issued a subpoena duces tecum to Lincolnshire Holdings, who is not a named party in the SDTX Case, but is the majority owner of defendant AMH. Although the subpoena states the place of compliance as FedEx Office Print & Ship Center, 303 W. 56th Street, New York, New York 10019, [3] counsel for the defendants in the SDTX Case subsequently advised that he would be representing Lincolnshire Holdings, and would accept

---

[3] **Exhibit A-1** at p. 1.

service of the subpoena on its behalf. In relevant part, the subpoena's instructions define the "applicable time period" for all requests as January 1, 2016, through the present (March 12, 2024). [4]

On April 15, 2024, Lincolnshire Holdings sent its responses and objections to the subpoena, stating:

> [Lincolnshire Holdings] objects to instruction 1 as overbroad and burdensome. Specifically, instruction 1's designation of "the applicable time period" as "January 1, 2016 through November 8, 2022" is unreasonable in light of Plaintiff's purported claims. [Lincolnshire Holdings] will not produce documents or communications dated after the filing of the Bankruptcy. Additionally, [Lincolnshire Holdings] will identify in response to specific requests where the start date of January 1, 2016 is unreasonably overbroad and/or unduly burdensome. [5]

In other words, Lincolnshire Holdings refused to produce any documents or communications from after JAB's bankruptcy filing, which occurred on September 7, 2021. Lincolnshire Holdings also individually objected to the "applicable time period" in response to **each of the 29 requests** and again reiterated that it will only produce documents from January 1, 2017, through September 7, 2021.[6]

Counsel for the Trustee and Lincolnshire Holdings conducted two Rule 37 Discovery Conferences, after which counsel concluded they were at a stalemate on the issue. According to the presiding SDTX Judge's procedures, the Trustee submitted a discovery dispute letter to the court on January 27, 2025.[7] In response, Lincolnshire Holdings argued against producing the post-petition documents because the "place of compliance" on the subpoena was in the Southern District of New York.[8]

---

[4] *Id.* at p. 4.
[5] **Exhibit A-2**, Lincolnshire Holdings Responses and Objections to Subpoena, at p. 5. The Trustee is unsure why Lincolnshire Holdings objected to producing documents through "November 8, 2022" when the instructions clearly defined the time period as through the present (March 12, 2024). Regardless, Lincolnshire Holdings objected to producing documents and communications after the bankruptcy filing.
[6] *See id.* at 7-17.
[7] **Exhibit A-7**, Trustee's Discovery Dispute Letter re: Lincolnshire Holdings Subpoena.
[8] **Exhibit A-8**, Lincolnshire Holdings' Response Letter.

**B.  Subpoena to Lincolnshire Management and the Lincolnshire Funds**

On May 29, 2024, the Trustee issued a subpoena duces tecum to Lincolnshire Management, and on June 26, 2024, the Trustee issued a subpoena duces tecum to the Lincolnshire Funds.  Again, Texas counsel for SDTX Defendants advised that he was also representing the Lincolnshire Entities and agreed to accept service of these subpoenas.  On July 15, 2024, counsel for the Trustee and Lincolnshire Management's Texas counsel (who also represents Lincolnshire Holdings, the Lincolnshire Funds, and all Defendants) held a Rule 37 Discovery Conference.  Counsel for Lincolnshire Management advised that it uses Lincolnshire Holdings' servers, so many of the requests in the subpoena are duplicative.  Accordingly, counsel for the Trustee agreed to review the subpoenas and issue a narrower subpoena. However, before doing so, Lincolnshire Management advised that it would review its responses to Request Nos. 3 and 5-20 and "provide more detail" first before the Trustee undertakes review and revision.  Lincolnshire Management never provided more detail.

After receiving no follow-up from Lincolnshire Management, the Trustee requested another Rule 37 Discovery Conference, which was held on October 17, 2024.  The parties agreed to the Trustee revising the subpoena to eliminate duplicative requests.  At that time, counsel for Lincolnshire Management (and the Lincolnshire Funds) advised that the Lincolnshire Funds do not have separate servers either and therefore asked that the Trustee reissue a subpoena to Lincolnshire Management that includes all requests to the Lincolnshire Funds.  Via follow-up correspondence on October 8, 2024, counsel for Lincolnshire Management and the Lincolnshire Funds confirmed that one subpoena to Lincolnshire Management "would suffice to cover all [the Lincolnshire Funds]." [9]

---

[9] **Exhibit A-9**, Correspondence regarding Lincolnshire Management and the Lincolnshire Funds.

On December 10, 2024, the Trustee revised and reissued a single subpoena to Lincolnshire Management and the Lincolnshire Funds. [10] Counsel for the Trustee provided her email address as the place of compliance on the subpoena. On December 24, 2024, Lincolnshire Management sent its objections to the subpoena, including the following general objection:

> Lincolnshire Management objects to the definition of "You and "Your" as it is overly broad and unduly burdensome, and it is also inconsistent with the parties' agreement to limit the Subpoena to Lincolnshire Management Inc. Therefore, Lincolnshire Management incorporates the foregoing objection into each objection and response that uses this defined term, and Lincolnshire Management will consider "You" to mean only Lincolnshire Management Inc. [11]

It also objected to producing documents in response to Request Nos. 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, and 16 because the requests were "incapable of being answered considering the definition of "You." [12]

Also included in its general objections was an objection to the "applicable time period" as "overbroad and unduly burdensome," [13] and Lincolnshire Management likewise objected to all 18 requests as "overly broad" and "unduly burdensome." The subpoena had defined the "applicable time period" as "January 1, 2017 through December 8, 2022." [14]

On January 7, 2025, the parties held a third Rule 37 Discovery Conference. Counsel for Lincolnshire Management stated that it refused to respond to the subpoena requests because the revised subpoena was directed to Lincolnshire Management **and** the Lincolnshire Funds, when it apparently should have only been directed to Lincolnshire Management. However, Lincolnshire Management never requested that the subpoena be directed only to Lincolnshire Management. On February 6, 2025, the Trustee submitted a discovery dispute letter with the court. [15] In response,

---

[10] **Exhibit A-3**, Subpoena to Lincolnshire Management and Funds.
[11] **Exhibit A-4**, Lincolnshire Management and Funds Responses and Objections to Subpoena, at p. 4.
[12] *Id.* at pp. 7-11.
[13] *Id.*
[14] **Exhibit A-3**, Subpoena to Lincolnshire Management and Funds, at p. 4.
[15] **Exhibit A-10**, Trustee's Discovery Dispute Letter to Court re: Lincolnshire Management Subpoena.

Lincolnshire Management argued that the dispute must be brought in the Southern District of New York. [16]

Lincolnshire Management also objects to request nos. 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, and 14 as "duplicative" of documents requested from other nonparties and broadly refers the Trustee to those requests without any citation to a responsive Bates stamp range. [17] For example, request No. 4 asks for "Copies of all of Your billing statements issued to JAB, AMH, and/or any of the AMH Subsidiaries." Lincolnshire Management responded:

> **RESPONSE**: Lincolnshire Management objects to this request as overly broad, unduly burdensome, and irrelevant to the party's claims and defenses in this case. Put simply, this request constitutes an impermissible fishing expedition. Lincolnshire Management further objects to this Request as duplicative of documents previously produced in response to the Subpoenas issued to LAMCH, Castlegate, and/or AMH. [18]

On June 6, 2025, counsel for the Trustee and counsel for Lincolnshire Management participated in a Rule 37 conference on this issue. Counsel for the Trustee requested that Lincolnshire Management supplement its responses to refer to the applicable Bates stamp range of documents responsive to the requests. Counsel refused to do so.

### C. Status Conference Rulings

On March 14, 2025, the parties attended a Status Conference in the Southern District of Texas to discuss, *inter alia*, pending discovery disputes. [19] Among these disputes were the subpoena to Lincolnshire Holdings, the subpoena to Lincolnshire Management and the Lincolnshire Funds, and the definition of "applicable time period," as provided in the aforementioned subpoenas as well as in the subpoena to AMH and in discovery requests to the Defendants.

---

[16] **Exhibit A-11**, Lincolnshire Management's Response Letter.
[17] **Exhibit A-4**, Lincolnshire Management and Funds Responses and Objections to Subpoena, at pp. 6-10.
[18] *Id.* at p. 7.
[19] *See* **Exhibit A-12**, Status Conference Transcript.

In their responsive letters to the SDTX Court relative to the discovery disputes, and in their oral argument at the Status Conference, counsel for the SDTX Defendants argued that they were objecting to producing documents post-bankruptcy filing because of an exculpation provision provided in Section 16.1 of the Plan.  However, a clear reading of the Plan shows that Section 16.1 only exculpates the Defendants of ordinary negligence post-bankruptcy. By contrast, the Plan states that the Defendants are not released from "any action (or inaction) constituting willful misconduct, fraud, or gross negligence." [20] Trustee's counsel cited to the Complaint to show he was seeking to hold the Defendants liable for acts constituting gross negligence.  Accordingly, the SDTX Court ruled that the applicable period of time would be modified from "January 1, 2016, through the present" to "January 1, 2017 through December 8, 2022." Counsel for the Trustee also pointed out that the same objection was lodged by other parties to discovery, and the SDTX Court ruled as follows:

> **THE COURT**: … So with that being said, that gives you 1/1/17 through 12/8/22. That's a revised – that's different from the January 1, '16, through December of '24. So that time frame has been revised as to that.
>
> **MS. BENDANA**: And, Your Honor, if we could agree that that applies -- we got the same objection from –
>
> **THE COURT**: Yes.
>
> **MS. BENDANA**: Okay. Great. Then that would knock out a lot.
>
> **THE COURT**: By way of the time frame?
>
> **MS. BENDANA**: Yes, by way of the time frame.
>
> **THE COURT**: Yes. Obviously if there's another objection as to bankruptcy filing being unclear, the same ruling.
>
> **MR. BURNS**: So for 17, 19 and 21 –
>
> **THE COURT**: Yes.

---

[20] **Exhibit A-6**, Plan, at p. 61.

**MR. BURNS**: -- and the disputed AMH?

**THE COURT**: Yes.

**MS. BENDANA**: For AMH. And then we also have other parties who made the same objection; and if we could have this ruling be consistent across the board, it would knock out the need to discuss those.

**THE COURT**: I appreciate that and I'm hopeful that that's the response. [21]

In response to this ruling from the court, opposing counsel raised the argument that the discovery disputes related to the Lincolnshire Entities must be brought in the Southern District of New York.  The SDTX Court agreed and so ruled. [22]

## V.    LEGAL STANDARD

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 26 sets forth the parameters for reviewing proportionality, namely "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "[P]ermissible discovery under Rule 26 must be relevant "to any party's claim or defense,' and that means 'proportional to the needs of the case.'" *United States v. Veeraswamy*, 347 F.R.D. 591, 598 (E.D.N.Y. 2024) (quoting *White v. Cnty. of Suffolk*, 2022 WL 1154839, at *2-3 (E.D.N.Y. Apr. 19, 2022)).

When a party fails to properly respond to a subpoena, "the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i).  If a subpoena seeks the production of documents,  the

---

[21] *Id.* at 39:10–40:8.  For a review of the full discussion of the subpoena dispute, *see id.* at 24:20–40:8.
[22] *Id.* at 43:6–44:2; 44:21– 45:13.

"place of compliance" must be within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2). Here, the Lincolnshire Entities are all headquartered and/or located in New York, New York. However, Rule 45(f) allows the court where compliance is required to transfer a subpoena-related motion to the issuing court for adjudication where "the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f).

## VI.   ARGUMENT

### A. The Lincolnshire Entities Should Be Compelled to Respond to the Subpoenas and Produce Relevant Documents and Communications from January 1, 2017, through December 8, 2022.

First, the SDTX Court already ruled that the proper "applicable time period" is January 1, 2017, through December 8, 2022, and the same ruling should apply to the subpoenas sent to the Lincolnshire Entities. The applicable scope of discovery should not change from entity to entity depending on where they are located.

Moreover, the prior ruling is correct and should be followed based on the plain language of the Plan and the allegations contained in the Complaint. On November 8, 2022, the Bankruptcy Court confirmed JAB's Plan. The Plan established a Liquidation Trust and appointed and empowered the Trustee to "investigate, prosecute, settle, abandon, or compromise various causes of action," including the D&O Insurance Assigned Claims, through the "Effective Date" of the Plan. [23] The "Effective Date" of the Plan is December 8, 2022. [24] Nonetheless, counsel for the Lincolnshire Entities contends that the defendants in the SDTX Case are exculpated from post-petition conduct under Section 16.1, so the Lincolnshire Entities should not be required to produce post-petition documents and communications. But Section 16.1 does *not* apply here. Section 16.1 provides in full:

---

[23] *See* **Exhibit A-6**, Plan, at p. 68.
[24] *See* **Exhibit A-13**, Notice of Effective Date.

16.1 Exculpation.

      The Debtor, **the Debtor's officers and managers that served during the Chapter 11 Case**, the Committee, the members of the Committee, and each of their respective professionals retained during the Chapter 11 Case, each solely in their capacities as such (collectively, the "Exculpated Parties"), **will neither have nor incur any liability to any entity for any action in good faith taken or omitted to be taken between the Petition Date and Effective Date in connection with or related to the Chapter 11 Case**, the sale or other disposition of the Debtor's assets or the formulation, preparation, dissemination, implementation, Confirmation, or Consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan; **provided however, that this limitation** will not affect or modify the obligations created under the Plan, or the rights of any Holder of an Allowed Claim to enforce its rights under the Plan, and **shall not release any action (or inaction) constituting willful misconduct, fraud, or gross negligence** (in each case subject to determination of such by final order of a court of competent jurisdiction); provided however, that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Plan, and such reasonable reliance shall form a defense to any such claim, Cause of Action, or liability. Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the protections of Section 1125(e) of the Bankruptcy Code. [25]

Thus, the exculpation provision includes an express carve-out for post-petition willful misconduct, fraud, and gross negligence. [26]

      The Trustee's Complaint alleges post-petition gross negligence by AMH (JAB's Manager) and the JAB Officers. [27] In Count I of the Complaint, the Trustee alleges the Defendants made transfers to or for the benefit of AMH during the "Relevant Period" [28]and alleges such conduct was grossly negligent. [29] Additionally, in Count III of the Complaint the Trustee alleges that the JAB Officers either engaged in, or permitted, certain Officers to form another company which was then used to gain an advantage over JAB and its creditors *inter alia*, in JAB's bankruptcy, and that these decisions benefitted themselves and others at the expense of JAB. [30]Accordingly, the SDTX court properly held that the Post-Petition Communications sought from the Lincolnshire Entities

---

[25] **Exhibit A-6**, Plan, at p. 61 (emphasis added).
[26] **Exhibit A-5**, Complaint.
[27] *Id.* at ¶ 153; *see also id.* at ¶ 92-119, 152-166.
[28] *Id.* at ¶ 127.
[29] *Id.* at ¶ 135.
[30] *Id.* at ¶¶ 153-165.

are relevant to the SDTX Case, and the Trustee seeks an order from this Court compelling the Lincolnshire Entities to produce them.

**B. The Subpoena to Lincolnshire Management and the Lincolnshire Funds is Proper and Enforceable.**

As outlined above, the Trustee initially sent individual subpoenas to Lincolnshire Management and the Lincolnshire Funds (seven separate subpoenas). Counsel for Lincolnshire Management and the Lincolnshire Funds requested that the Trustee consolidate the subpoena into a single subpoena, which the Trustee, in good faith, did. This understanding is captured in correspondence between counsel. [31] Thereafter, in an effort to further delay producing documents, Lincolnshire Management's counsel objected to the single subpoena because it was addressed to both Lincolnshire Management and the Lincolnshire Funds. These delay tactics plainly contravene the purpose of the Federal Rules of Civil Procedure. *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 673 F. Supp. 3d 345, 363 (S.D.N.Y. 2023) ("If parties are allowed to flout their obligations, choosing to wait to make a response until a trial court has lost patience with them, the effect will be to embroil trial judges in day-to-day supervision of discovery, a result directly contrary to the overall scheme of the federal discovery rules. Under the deterrence principle of *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639 (1976), a party's hopelessly belated compliance should not be accorded great weight. Any other conclusion would encourage dilatory tactics, and compliance with discovery orders would only come when the backs of counsel and the litigants were against the wall.") (quoting *Cine Forty-Second St. Theatre v. Allied Artists*, 602 F.2d 1062, 1068 (2d Cir. 1979).  This is especially true given that Lincolnshire Management and the Lincolnshire Funds control the documents and communications requested. [32] *See Chevron Corp. v. Donziger*, 296 F.R.D. 168, 220 (S.D.N.Y. 2013) (finding that defendants'

---

[31] **Exhibit A-11**, Correspondence regarding Lincolnshire Management and the Lincolnshire Funds, at p. 2.

[32] *See* **Exhibit A-11**, Correspondence regarding Lincolnshire Management and the Lincolnshire Funds, at p. 2.

efforts to block discovery and evade their discovery obligations by making baseless objections and arguments were inexcusable given that the defendants had "practical control over the responsive documents").

Here, opposing counsel stated that all documents related to the Lincolnshire Funds are controlled by Lincolnshire Management, the Lincolnshire Funds' manager, so a single subpoena "would suffice." [33] To the extent Lincolnshire Management and the Lincolnshire Funds contend that the single subpoena addressed to all of them is improper—despite having made the request for a single subpoena—the subpoena is still valid and enforceable. *See Trump v. Vance*, 977 F.3d 198, 211 (2d Cir. 2020) ("The mere fact that the subpoena seeks information from a variety of related entities—all owned by the same individual—would not overcome the presumption of validity."); *see also In re Heuwetter*, 584 F. Supp. 119, 125 (S.D.N.Y. 1984) (finding that subpoenas served on a law firm requesting "the production of all papers or records of the sixteen entities that are in the attorney's possession and that are not privileged" was only improper to the extent it sought documents of "any *predecessor, successor or affiliated* entities, that are not listed in the subpoena and that are completely separate entities from the listed entities…") (emphasis in original).

And again, Lincolnshire Management and the Lincolnshire Funds should be required to produce Post-Petition Communications, as ordered by the SDTX Court against all discovery parties within its jurisdiction.

**C. Lincolnshire Management Should be Ordered to Respond to the Requests with References to Applicable Bates Stamp Ranges.**

"[W]hen a party produces documents in response to discovery requests, the responding party must identify specific documents that are responsive to each request in order to prevent "document dumps"; this is generally done by reference to documents identified by Bates numbers.

---

[33] *Id.*

*Excellent Home Care Servs., LLC v. FGA, Inc.*, 2017 WL 9732082, at *7 (E.D.N.Y. June 5, 2017); *see also Napolitano v. Synthes USA, LLC*, 297 F.R.D. 194, 205 (D. Conn. 2014) (ordering defendant to produce responsive documents and provide the Bates Stamp numbers if the documents were previously produced); *Hobson v. Kemper Indep. Ins. Co.*, 2021 WL 3486867, at *7 (D. Conn. Aug. 9, 2021) (requiring defendant to provide a signed verification that all responsive documents have been produced and that such verification "specifically identify, by Bates number or exhibit number, which produced documents are responsive to this request").

Here, Lincolnshire Management objects to request nos. 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, and 14 as duplicative of requests sent to other entities. [34] It made no effort to cite which documents are responsive to the requests.  Notably, when counsel for the Lincolnshire Entities and the defendants requested that the Trustee specifically identify which documents were responsive to certain discovery requests by Bates range, the Trustee agreed and provided such responses.  The Trustee seeks an order compelling Lincolnshire Management to supplement its discovery response nos. 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, and 14 with references to responsive documents.

**D.  Alternatively, Exceptional Circumstances Warrant Transfer.**

Rule 45 does not define "exceptional circumstances," but the advisory committee notes provide one example of such circumstances: "transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when **that court has already ruled on issues presented by the motion** or the same issues are likely to arise in discovery in many districts."  Fed. R. Civ. P. 45(f), advisory committee notes to 2013 amendment (emphasis added).  Courts in this District have also transferred motions to issuing courts where "the issuing court is best-positioned to address the subpoena dispute given the nature of the dispute and the posture and complexity of the underlying action," where "the issuing court has already set

---

[34] **Exhibit A-4**, Lincolnshire Management and Funds Responses and Objections to Subpoena, at pp. 7-10.

out a discovery schedule in ... the underlying action," and to "serve the interests of justice and judicial efficiency." *Full Circle United, LLC v. Bay Tek Ent., Inc.*, 581 F. Supp. 3d 523, 525 (S.D.N.Y. 2022) (quoting *SBA Commc'ns Corp. v. Fractus, S.A.*, 2019 WL 4879333, at *2 (S.D.N.Y. Oct. 3, 2019); then quoting *Google LLC v. Fortress Inv. Grp. LLC*, 2020 WL 1304039, at *1 (S.D.N.Y. Mar. 18, 2020); and then quoting *Stanziale v. Pepper Hamilton LLP*, 2007 WL 473703, at *6 (S.D.N.Y. Feb. 9, 2007)).

At least three factors of exceptional circumstances exist to warrant transfer of this Motion. First, the SDTX Court has already ruled on the "applicable time period" as to all parties within that court's jurisdiction. The same objection was presented in the subpoenas at issue here, but the ruling did not apply to the subpoenas only because the Court deemed that the subpoenas were outside the court's jurisdiction. Not transferring the Motion could therefore result in inconsistent discovery rulings.

Second, the duration of the SDTX Case combined with its complex history weighs in favor of finding exceptional circumstances. The SDTX Case has been pending for almost two years, concerns eight named parties and numerous other related entities, and has resulted in multiple discovery disputes. Third, transferring the motion would serve judicial economy since the issue involving the "applicable time period" has already been briefed and decided in the SDTX Case.

The Lincolnshire Entities are represented by the same Louisiana and Texas counsel representing all the SDTX Defendants, and that counsel already accepted service of the subpoenas on their behalf. In addition, the Lincolnshire Entities should be able to produce all requested documents electronically. Rather, the Lincolnshire Entities refused to consent to the SDTX Court ruling on the issue merely in an effort to delay their compliance with the subpoenas.

These exceptional circumstances outweigh the interests of the Lincolnshire Entities in having the dispute resolved in this district.

## VII.    CONCLUSION

For the foregoing reasons, the Trustee respectfully asks that the Court grant its Motion, overrule the Lincolnshire Entities' objection to the "applicable time period," and issue an order:

(1)    Compelling Lincolnshire AMC Holdings, LLC to produce all documents and communications through December 8, 2022, that are responsive to Request Nos. 1-29.

(2)    Compelling Lincolnshire Management and the Lincolnshire Funds to produce all documents and communications through December 8, 2022, that are responsive to Request Nos. 1-18.

(3)    Compelling Lincolnshire Management and the Funds to supplement their Response Nos. 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, and 14 by identifying by Bates numbers which of the previously produced documents are responsive to which of the discovery requests issued to them.

Alternatively, the Trustee asks that the Court transfer this Motion to be adjudicated in the SDTX Case, *H. Kenneth Lefoldt, Jr. v. Brent Boudreaux, et al.*, No. 4:23-CV-03331. Two alternative proposed orders are attached for the Court's consideration.


 Submitted: July 1, 2025                              Submitted by:

                                                              */s/ Michelle McMahon*
                                                       **CULLEN AND DYKMAN LLP**
                                                       Michelle McMahon, Esq.
                                                       Sarah Franzetti, Esq.
                                                       One Battery Park Plaza, 34th Fl.
                                                       New York, New York 10004
                                                       (212) 510-2296
                                                       Email: mmcmahon@cullenllp.com
                                                       sfranzetti@cullenllp.com


                                                               and

_____ /s/ Alicia Bendana_

**FISHMAN HAYGOOD LLP**
Alicia M. Bendana, Esq.*
201 St. Charles Avenue, Suite 4600
New Orleans, Louisiana 70170
Telephone: (504) 586-5252
Facsimile: (504) 586-5250
Email: abendana@fishmanhaygood.com

*\* Pro Hac Vice Application to be submitted.*

*Counsel to H. Kenneth Lefoldt, in his capacity as the Trustee for the Liquidating Trust of the JAB Energy Solutions II, LLC*

**CERTIFICATE OF CONFERENCE PURSUANT TO FED. R. CIV. P. 37**

Counsel for the Trustee certifies that the parties in good faith conferred regarding the relief requested in the *Trustee's Petition to Enforce Subpoenas*, specifically on May 2, 2024, July 15, 2024, October 17, 2024, January 7, 2025, January 17, 2024, and June 6, 2025.

Submitted: July 1, 2025

_____ */s/ Alicia Bendana*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served on counsel of record via electronic mail on this 1st of July, 2025 using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have consented to electronic notification.

_____ */s/ Michelle McMahon*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1**

Counsel for the Trustee certifies that the *Trustee's Petition to Enforce Subpoenas* contains 4,542 words, excluding the caption, signature blocks, and certificates.

Submitted: July 1, 2025

_____ */s/ Michelle McMahon*